**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK**
_____

**UNITED STATES OF AMERICA,**

        **Plaintiff,**
        **v.**                                                               **12-CR-158-A**

**PASCUAL GIOVANNY NAVARRO-GONZALEZ
and JUAN MONTANEZ,**

        **Defendants.**
_____

## DECISION AND ORDER

The government has filed a motion wherein it seeks an order from this Court directing the above-named defendants to provide DNA buccal samples to law enforcement for analysis by the Erie County Central Police Services Forensic Laboratory "for comparison purposes with DNA swabs taken from a firearm and other evidence seized during the investigation at issue in this action." Dkt. #68, ¶1.

Defendant Pascual Giovanny Navarro-Gonzalez filed a response in opposition to the government's motion. Dkt. #72. The instant motion was filed on June 24, 2013 seeking relief with respect to both defendants. On June 26, 2013, defendant Juan Montanez plead guilty to Count 1 of the Indictment. Accordingly, the Court will treat the instant motion as relating only to defendant Pascual Giovanny Navarro-Gonzalez.

# **FACTS**[1]

On March 6, 2012 a federal search warrant was executed at 39 Montclair Avenue, Buffalo, New York. Dkt. #68, ¶3. Defendant Pascual Giovanny Navarro-Gonzalez who was residing at 39 Montclair at the time, was home when the search warrant was executed. *Id*. During the search, federal agents seized cocaine, drug paraphernalia, 50 rounds of .380 caliber ammunition and 15 rounds of .223 caliber ammunition. *Id*. Thereafter, a search was conducted of a storage unit on March 14, 2012 which had been leased by Alejandro Navarro-Gonzalez[2] on March 8, 2012, two days after the execution of the search warrant at 39 Montclair. *Id*. During the search of the storage unit, agents seized more than 1 kilogram of heroin, a Kel-tech .32 caliber semiautomatic handgun, 92 rounds of .22 caliber ammunition, 14 boxes of Dormin (a sleep aid commonly used as a cutting agent for heroin, with the active ingredient diphenhydramine hydrochloride), a heroin press, digital scales, and other drug paraphernalia. *Id*.

On June 12, 2013, Erie County Central Police Services Forensic Biologist Michelle Lillie conducted a forensic analysis of the Kel-tech .32 caliber semiautomatic

---

[1] The facts are taken from the affidavit of AUSA Baumgarten, sworn to June 24, 2013 (Dkt. #68), in support of the government's motion and from the allegations set forth in the Indictment (Dkt. #1).

[2] The government believes that Alejandro Navarro-Gonzalez is the brother of defendant herein Pascual Giovanny Navarro-Gonzalez. Dkt. #68, ¶3. Alejandro Navarro-Gonzalez was charged in a separate Indictment and was convicted following a trial of possession with intent to distribute one kilogram of more of heroin and maintaining a drug-involved premises in violation of Title 21, United States Code, Sections 841(a)(1) and 856(a).

handgun seized on March 14, 2012 from the storage unit discussed above. Dkt. #68, ¶5. As reflected in her report attached as Exhibit B to the Affidavit of AUSA Mary C. Baumgarten (Dkt. #68), Michelle Lillie determined that "[b]ased upon the PCR results above, the Identifier Plus DNA profile obtained from the swab of the handgun (Item #2.2) is a mixture of DNA from at least three individuals, including at least one male individual . . . The DNA profile of Alejandro Navarro-Gonzalez (Item #1) cannot be excluded from the DNA in the mixture." *Id*. Ms. Lillie further stated in her report that, "[a]dditional known buccal specimens are required for further analysis." *Id*. Moreover, Ms. Lillie indicated that the mixture DNA profile obtained from the swab of the handgun is not suitable for entry into CODIS, the national databank maintained by the FBI. *Id*.

## DISCUSSION AND ANALYSIS

On June 3, 2013, the United States Supreme Court ruled that police officers may take a DNA sample of an individual where probable cause existed to arrest that individual for a serious crime without any further showing of reasonable suspicion or probable cause relating to the need for the DNA sample. *Maryland v. King*, __ U.S. __, 133 S.Ct. 1958 (2013); *see also*, *United States v. Eldridge*, No. 09CR329A, 2013 WL2635207 (Jun. 12, 2013). In comparing the taking of DNA to a search incident to arrest, the Supreme Court stated: "[w]hen probable case exists to remove an individual from the normal channels of society and hold him in legal custody, DNA identification plays a critical role in serving those interests." *King*, 133 S.Ct. at 1971. In addition, the Supreme Court also analogized the taking of a DNA sample to the taking of fingerprints,

stating:

> DNA identification is an advanced technique superior to fingerprinting in many ways, so much so that to insist on fingerprints as the norm would make little sense to either the forensic expert or a layperson. The additional intrusion upon the arrestee's privacy beyond that associated with fingerprinting is not significant, . . . , and DNA is a markedly more accurate form of identifying arrestees. A suspect who has changed his facial features to evade photographic identification or even one who has undertaken the more arduous task of altering his fingerprints cannot escape the revealing power of his DNA.

*King*, 133 S.Ct. at 1976.

Prior to *King*, in addressing the issue of taking bodily physical evidence, the United States Supreme Court had stated:

> [T]he permissibility of a particular practice "is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests."  *Delaware v. Prouse*, 440 U.S. at 654, 99 S.Ct. at 1396; *United States v. Martinez-Fuerte*, 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976).
>
> In most criminal cases, we strike this balance in favor of the procedures described by the Warrant Clause of the Fourth Amendment.  *See United States v. Place, supra*, 462 U.S. at 701, and n. 2, 103 S.Ct. at 2641 and n. 2; *United States v. United States District Court*, 407 U.S. 297, 315, 92 S.Ct. 2125, 2135-2136, 32 L.Ed.2d 752 (1972).

*Skinner v. Railway Labor Executive's Association*, 489 U.S. 602, 619 (1989).

> When law enforcement officials undertake a search to discover evidence of criminal wrongdoing, the Fourth Amendment's requirement of reasonableness generally mandates that the officers have both probable cause and a search warrant.

*United States v. Amerson*, 483 F.3d 73, 80 (2d Cir.), *cert. denied,* 552 U.S. 1042 (2007).

It is obvious that the immediate objective of the government in seeking buccal swabs from the defendant is to generate evidence for use in its criminal prosecution of the defendant. Such sample taking constitutes a search within the meaning of the Fourth Amendment. "The overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the State." *Schmerber v. California*, 384 U.S. 757, 767 (1966); *United States v. Nicolosi*, 885 F. Supp. 50, 52 (E.D.N.Y. 1995).

I find that the taking of buccal swabs from the inside of the defendant's mouth is properly viewed as implicating his dignity interests. Because the samples taken "can provide a significant amount of genetic identity information, a personal privacy interest of the defendant also exists. As a result, compliance with the Fourth Amendment is mandated; namely, there must be a finding of probable cause to warrant the taking of such samples. *United States v. Nicolosi, supra* at 55.

The defendant Pascual Giovanny Navarro-Gonzalez, in objecting to the government's motion, argues "the government has not established reasonable

individualized suspicion to compel the DNA samples." Dkt. #72, ¶5. The defendant further argues,

> [f]urthermore, the firearm in question was obtained by a search warrant for a different individual that is being prosecuted under a separate case. The only evidence presented to show that Defendant's DNA might be present on the firearm is that the firearm was being stored at a locker rented by Defendant's brother. No evidence has been presented showing any other link between the firearm and the Defendant in this action and is not essential to the Government's proof to convict my client of the Drug related charges.

Dkt. #72, ¶7.

Even if *King* did not alleviate the need for a showing of probable cause, probable cause exists to support the request for a DNA sample here. Accordingly, the asserted positions of the defendant are without legal merit and are rejected.

The grand jury has found probable cause, as alleged in the Indictment, to believe that the defendant Pascual Giovanny Navarro-Gonzalez, along with defendants Erick Joel Reyes-Barretto and Juan Montanez , maintained 39 Montclair Avenue for the purpose of manufacturing, distributing and using heroin, marijuana and cocaine. Dkt. #1. Defendant Pascual Giovanny Navarro-Gonzalez was present at 39 Montclair Avenue when cocaine, heroin, drug paraphernalia and ammunition were seized on March 6, 2012 pursuant to a search warrant. Other evidence obtained during the investigation revealed that two days after the execution of the search warrant at 39 Montclair Avenue, on March 8, 2012, the defendant's brother, Alejandro Navarro-

Gonzalez leased a storage unit.  During the search of the storage unit conducted on March 14, 2012, the Kel-tech .32 caliber semiautomatic handgun was recovered. The DNA profile found on this handgun established that it is "a mixture of DNA from at least three individuals, including at least one male individual. . . . The DNA profile of Alejandro Navarro-Gonzalez (Item #1) cannot be excluded from the DNA in the mixture."  Dkt. #68, ¶5 and Exhibit B.  In addition, testimony during the recent trial of Alejandro Navarro-Gonzalez established that Alejandro Navarro-Gonzalez went to 39 Montclair Avenue daily (the residence of defendant Pascual Giovanny Navarro-Gonzalez) to obtain heroin and cocaine which he sold throughout Buffalo.   As a result, there is a sufficient basis to warrant a finding that probable cause does exist for the ordering of the taking of the buccal samples from him for purposes of comparing his DNA profile to that obtained from the handgun.

## **CONCLUSION**

Based on the foregoing, I find that there is sufficient probable cause to warrant the issuance of an order requiring defendant Pascual Giovanny Navarro-Gonzalez to provide a buccal DNA sample to the government as requested in its motion.

Therefore, it is hereby

**ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Decision and Order be filed with the Clerk of Court.

**ANY OBJECTIONS** to this Decision and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Decision and Order in accordance with the above statute, Fed. R. Crim. P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988). **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and

the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2 (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Judge's refusal to consider the objection.**

DATED: Buffalo, New York
July 12, 2013

*s/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.
United States Magistrate Judge**